The next case is also a bail hearing, United States v. Bergstein. Good morning. May it please the court, my name is Alexandra Shapiro and I represent appellant David Bergstein. This appeal presents substantial questions about whether appellant was deprived of a fair trial. For purposes of the bail motion, we focus on two. First, the erroneous admission of Rule 404b evidence, and second, the quashing of Rule 17c subpoenas. The district court, with respect to the first set of issues, the district court erroneously admitted copious amounts of 404b evidence, which was extremely prejudicial and which Mr. Bergstein had no fair opportunity to rebut. And these rulings allowed the government to create a false impression that Mr. Bergstein is a bad person, which polluted the jury's findings. There's a substantial question whether these errors, individually or cumulatively, deprive Mr. Bergstein of a fair trial. Now, we've detailed four categories of this type of evidence in our papers, and I'd just like to briefly discuss two of them, the tax evidence and the gambling evidence. Can I ask you, I thought this was a situation where if he was a substantial flight risk, then that's enough. Your Honor, you are correct that the district court made a finding that Mr. Bergstein was a risk of flight. We submit that that finding was clearly erroneous. Mr. Bergstein, throughout this case . . . So you acknowledge that, but you acknowledge that the court could base the decision on risk of flight. That's correct, Your Honor. Okay, but you want to discuss the other prong. We have to demonstrate both lack of risk of flight and that there are substantial questions. I had intended to address both. Okay. I can address the risk of flight first, if the court would like me to, very briefly, and then I'll turn back to the substantial questions. Mr. Bergstein has been in full compliance of all bail conditions throughout this case, despite knowing from the outs that he faced very serious charges and a potentially substantial sentence. He took several foreign trips with the permission of the court, always returned. He has strong . . . He's a U.S. citizen, lived in California for the past 34 years, very strong family ties with two young children, ties to the L.A. community. And he even proposed, in his motion for reconsideration after the verdict, a substantial security package with 24-7 monitoring if the court thought that was necessary. But there's been no indication throughout the case that he had any inclination to flee or, you know, abscond with his entire family and to some foreign country. So we submit those findings are clearly erroneous. And with respect to the district courts, the government's representation that he had access to a private plane, in fact, in March of this year, he divested the entity's interest in that plane. With respect to the issues, if I may, just the tax evidence was . . . Take your time. You'll be all right. Thank you, Your Honor. The tax evidence was extensive. It covered over a decade worth of personal returns as well as returns relating to entities the government claimed Mr. Bergstein controlled. It created a false, unfair, and extremely prejudicial depiction of Mr. Bergstein as a tax chief. There was no legitimate purpose for this. The government's evidence included in its case-in-chief testimony by an IRS agent who testified that he focuses on unreported income and money laundering and then proceeded to detail not only the two years of personal returns the district court had previously said could come in, but to go on at great length about his opinion that various entities' filings were deficient and that they should have filed certain returns but didn't over the period from 2009 to 2016. Can I ask a question? The defendant took the stand, right? Correct. So a lot of things would be relevant to his truthfulness, right? So does this come down to just a weighing whether it's more prejudicial even though it might be relevant to his impeachment evidence? No, I don't think so, Your Honor, for two reasons. Number one, the IRS agent's testimony was really expert testimony for which the defendant had received no notice disguised as lay testimony, and we've detailed in our papers the case law explaining why that's impermissible. And then on top of that, he was not allowed to rebut it. He had no opportunity other than through his own testimony, which I submit is not enough, the uncorroborated testimony of the defendant. He wanted to put on an expert to explain the tax issues, and the government created this impression that he should have paid taxes, should have filed certain returns that he didn't, and he never had a chance to have anyone explain why the government's insinuations about these tax issues was incorrect. And all of this was, we respectfully submit, completely irrelevant to the actual charges in the case. And when you take it together with the other 404B issues, and I'll just, I'm running out of time, but I'll just touch for two seconds on the gambling. I mean, the gambling evidence was totally irrelevant, inflammatory, related to 2007 and 2008, several years before the transactions that related to the charges even occurred. There was not tied in any way to these Weston loans at all. And then lastly, I do want to just touch briefly on the Rule 17c issue, because I think that that is clearly under the statute and this Court's holding in Rendell a substantial question on appeal. It's a novel question. This Court has never addressed whether the Nixon standard applies to Rule 17c subpoenas issued to third parties. And the Supreme Court indeed reserved that question in Nixon itself, although it is true that the majority of district courts in this circuit have applied the Nixon standard. There are several district courts, including the very thoughtful opinions in Tucker and Rajaratnam that we cite in our papers, where the district courts explain why it shouldn't apply in the context of third party and why the concerns about evading Rule 16 discovery don't apply in that context. And if I may just make one additional point, I think what went on in this case here illustrates why Rule 17c shouldn't, subpoenas shouldn't be held, defendants shouldn't be held to the Nixon standard in this kind of context. What happened here was that the government was able to avoid obtaining certain evidence that might have been helpful to Mr. Bergstein's defense by not fully subpoenaing, for example, personal e-mails of the two cooperators. And then it moved to quash the subpoenas for that very evidence, thereby preventing Mr. Bergstein from accessing information that could well have helped his defense. So for those reasons, we ask that the Court grant bail. Thank you. Thank you very much, Ms. Shapiro. Mr. Imperatore, good morning. Good morning. May it please the Court, Edward Imperatore for the government. I represented the government in the district court and I do so here on appeal as well. The Court should deny the defendant's motion for bail pending appeal. On the basis of the evidence and facts before the district court, the district court properly found that the defendant was both a risk of flight and a danger to the community. The defendant does not come close of meeting his burden to demonstrate that Judge Castell clearly erred in making either of those findings. That is particularly true in light of Judge Castell's finding that the defendant engaged in an extraordinary obstruction of justice, which included pervasive perjury, both before the jury as well as the SEC in prior testimony, and even attempting to create fake, backdated documents to introduce in his own defense a trial. There is no basis to disturb these findings on appeal. Now, because either of these findings, the finding that he is a danger to the community and the finding that he is a flight risk, either one is dispositive to this question before this court. The court does not need to reach the question of whether there was a substantial question of law in this case, but even if the court reaches that issue, none of the discretion, and in any event, in light of the overwhelming evidence of the defendant's guilt, which included the testimony of two cooperating witnesses, emails containing misrepresentations and bank records showing misappropriation of victim funds, any error is harmless. Let me begin by addressing the risk of flight argument. It simply cannot be said on the basis of this record that Judge Castell clearly erred in finding that the defendant was a risk of flight. That finding was based on a host of factors. First of all, the extensive obstruction of justice in this case, the return of the guilty verdict, which Judge Castell found significantly changed the landscape here, the fact that the defendant had access to significant wealth, that he had access to multiple private aircraft, the seriousness of the charge . . . That claim is improperly raised before this court, Your Honor, and that claim is false. There is no evidence of it. The government has learned that this aircraft, a 22-seat Gulfstream jet, is currently registered, according to FAA records, to a shell company called FP World, of which the defendant is an officer. Even if the defendant raised that question before an appropriate forum in the district court, the government would show that that claim is wrong. In any event, before Judge Castell, the facts demonstrated that the defendant had access to multiple private aircraft. He used Weston funds to fly on at least two private aircraft. He also traveled on multiple private aircraft in recent years. It certainly cannot be said that Judge Castell clearly erred in making that finding, and of course, that was only one basis for finding that there was a risk of flight. The court also, of course, found that the defendant's proposed bail package would not mitigate any risk that the defendant could move assets to another jurisdiction and relocate there. What about this 24-7 security? Your Honor, Judge Castell fully considered that and was well within his discretion in concluding that was not appropriate here. He made two important findings that are relevant for that. First of all, he found that that proposal would not keep the defendant from moving assets offshore and relocating. It also would not preclude the defendant from continuing to do business while he was out on bail. That was the basis. His assets are not frozen? They are not frozen, Your Honor. Those are each independent bases for concluding that that was inappropriate. Of course, courts like this court in Banke found that it is not error to deny bail on a private security package. Of course, other courts have found that it certainly does not replicate the circumstances of incarceration by the Bureau of Prisons. Judge Castell certainly did not clearly err in concluding that that package was inappropriate on the facts of this case. At bottom, he found that he could not trust the defendant. The defendant obstructed justice on a grand scale. Bail, of course, at bottom is an issue of trust. The defendant certainly could not be trusted to remain out on bail after his extraordinary obstruction of justice in this case. If the court would like me to address the substantial questions of law, I can just briefly address that as well. These arguments rest on a number of mischaracterizations of the evidence. Just briefly on the tax and to piggyback on Judge Rustani's question, the defendant did testify in this case. The government did not introduce fourteen years of tax returns. What the government did is it appropriately questioned the defendant in cross-examination about those returns. The defendant opened the door to questioning by claiming more broadly as part of his defense that he was a legitimate and successful .